UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

STEADFAST INSURANCE COMPANY,  )
                                                     )
            Plaintiff,  )  Case No. 1:07-cv-366
                                                     )
v.                                              )  Honorable Janet T. Neff
                                                     )
PRIME TITLE SERVICES, LLC, et al.,  )
                                                     )  **REPORT AND RECOMMENDATION**
            Defendants.  )
_____)

This is a declaratory judgment action brought by Steadfast Insurance Company, seeking a declaration that it is not liable under a Title Agent's, Abstractors, and Escrow Agent's Errors and Omissions Liability Policy ("the Policy") issued to defendant Prime Title Services, LLC, effective September 18, 2005. Defendants are the insured, Prime Title Services; Scott and Eileen M. Hoeft, the only members of the Prime Title Services, LLC; and First American Title Insurance Company, which is the plaintiff in a Kent County Circuit Court action seeking to recover against Prime Title Services, LLC.[1]  Subject-matter jurisdiction is founded upon complete diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332.

Presently pending before the court is plaintiff's motion for summary judgment. Plaintiff's motion raises three grounds. First, plaintiff asserts that it is entitled to rescission of the Policy on the basis of misrepresentations by defendant Scott D. Hoeft in the policy application. The

---

[1] Defendant Old Republic National Title Insurance Company, also a plaintiff in the underlying Kent County case, has been defaulted. Prime Title Services, which is defunct, has also been defaulted. (docket # 17).

second ground is that the policy exclusion for intentional, criminal, or fraudulent acts bars recovery. Finally, plaintiff relies on the definition of "damages" in the Policy, arguing that it does not cover embezzled or misappropriated funds. Only defendant American Title Insurance Company responded to the motion.

By order of reference entered March 4, 2008, District Judge Janet T. Neff referred this case to me for the entry of a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). (Order of Reference, docket # 20). I conducted a hearing on the motion on April 17, 2008. At the hearing, counsel for defendant American Title Insurance Company requested an opportunity to conduct further factual investigation in response to the summary judgment motion. I entered an order (docket # 31) requiring plaintiff to produce to defendant all examinations under oath taken in this matter and allowed any party to depose Scott and Eileen Hoeft. The order also established a supplemental briefing schedule. That schedule was extended at the request of First American Title. (Order, docket # 37). Thereafter, at the request of all parties, the proceedings were stayed pending a mediation held in the state court. When the mediation was unsuccessful, I established a final briefing schedule for plaintiff's motion for summary judgment. Supplemental briefs have now been submitted to the court, along with a transcript of the deposition of Scott Hoeft taken on June 30, 2008.

For the reasons set forth below, I conclude that plaintiff has established, beyond genuine issue, grounds for rescission of the Policy under Michigan law. I therefore recommend that plaintiff's motion be granted on this ground. It is not necessary to address the alternative grounds for the motion, which are rendered moot by rescission of the Policy.

**Proposed Findings of Fact**

Attached to plaintiff's motion for summary judgment are certain items of documentary evidence, including insurance policies and applications, authenticated by the affidavit of Kathleen Ehrichs.[2]  These exhibits are cited herein as Plf. Ex. ___.  Defendant American Title Insurance Co. has submitted the deposition of defendant Scott Hoeft, taken in this case on June 30, 2008.  The deposition is cited as "Hoeft Dep. at ___."  Additionally, both parties have relied on the deposition of Scott Hoeft taken on May 8, 2007, in the related Kent County Circuit Court litigation.  (Plf. Ex. A; Def. Ex. A).  The deposition is cited as "State Dep. at ___."  These materials establish the following facts beyond genuine issue.

    **A.**    **Parties**

    1.    Defendant Prime Title Services, LLC, was a limited liability corporation.  Defendants Scott and Ellen Hoeft and two other individuals formed the company in 1998, but by 2000, the Hoefts were its sole members.  (State Dep. at 26-27).  Prime Title ran a regional title and escrow business that handled real estate closings in the State of Michigan.

    2.    Defendant First American Title Insurance Company is a California corporation authorized to do business in the State of Michigan.  First American Title is a title insurer.  Beginning in 2000, it entered into agency agreements with Prime Title, authorizing Prime Title to issue title insurance policies on behalf of First American.  (Hoeft Dep. at 5).

    3.    Under the agency agreement, Prime Title was to escrow all funds received in connection with its agency operations and to disburse funds only for the purposes for which they

---

[2] The "Blood Report" (Plf. Ex. F), commissioned by the insurance company to investigate Hoeft's wrongdoing, is hearsay and therefore inadmissible.

were escrowed. One of the purposes for which Prime Title was entrusted to keep and expend funds in its escrow account was to pay lien holders in connection with real estate closings.

   4. Plaintiff Steadfast Insurance Company is a Delaware corporation authorized to do business in the State of Michigan.

**B. The Policy**

   5. Steadfast issued errors and omissions coverage to Prime Title since 1998. (Hoeft Dep. at 8-9, 13). The last policy written by Steadfast for Prime Title Services was a Title Agents, Abstractors, and Escrow Agent's Error and Omissions Liability Insurance Policy ("the Policy"), Policy No. EOC5876620-02 (Certificate No. T 1161602), effective September 18, 2005, with a retroactive date of September 18, 1998. To procure the policy, defendant Scott Hoeft completed and signed a renewal application, as he had every year. (Hoeft Dep. at 9). The application, signed in July 2005, expressly states that the Policy would be issued in reliance on the truth of the applicant's representations and allowed Steadfast to void the Policy upon discovery of any fraud, intentional concealment, or misrepresentation of material fact. (Application, Plf. Ex. H). Question 21 of the renewal application read as follows:

> 21. Does the Applicant or any Prospective Insured know of any circumstances, acts, errors, or omissions that could result in a professional liability claim against the Applicant? If "Yes," you must complete the enclosed claims addendum for each circumstance.

Mr. Hoeft answered the question, "No."

   6. The renewal application also contained a statement that, after inquiry, no person proposed for coverage was aware of "any fact or circumstance" which reasonably might give rise to a future claim that would fall within the scope of coverage. (Plf. Ex. H, p. 3 of 3).

### C. The Kent County Action

7. In May 2006, First American Title Insurance Company began a civil action against Prime Title Services, Scott and Eileen Hoeft, and others in the Kent County Circuit Court (*Old Republic National Title Ins. Co., et al. v. Prime Title Services, LLC, et al.*, case no. 05-12548-CK) ("Kent County action"). The Kent County action arises out of the failure of Prime Title Services to pay certain liens and mortgages out of escrowed funds held by Prime Title. According to the allegations in the Kent County complaint (Plf. Ex. B), Prime Title issued title insurance policies indicating that certain liens had been discharged, when Prime Title knew that the liens remained on the property. Instead of paying the real property liens with escrowed funds, Prime Title (at the alleged direction of Scott Hoeft) misappropriated the escrowed funds for the benefit of itself and GBW, a Grand Rapids builder. As a result of this alleged wrongdoing, American Title, as the underwriter of the title insurance policies issued by Prime Title Services in its name, found itself responsible for discharging the real estate liens. American Title sued Prime Title, Hoeft, and others in the Kent County Circuit Court for indemnity against all claims made by insureds under the title insurance policies issued in the name of First American.

### D. Hoeft's Scheme

8. The depositions of defendant Scott Hoeft, taken in the Kent County action on May 8, 2007, and in this case on June 30, 2008, confirmed the details of the misappropriation scheme that he had conducted as the principal officer of Prime Title. In late 2004, Prime Title began to issue clear title policies, despite the fact that it had failed to pay off preexisting liens. (Hoeft Dep. at 22; State Dep. at 145). Hoeft would hold money back for purposes of paying off these liens, but

failed to discharge the liens. Instead, he "loaned" the money to GBW, a Grand Rapids builder, controlled by Chuck Gahan. Hoeft would use money from a subsequent closing to pay off the liens from the previous closing. (State Dep. at 146-47). Hoeft used most of the misappropriated escrowed funds to make unauthorized "loans" to GBW, on the promise by GBW that it would repay the loans and "square everything up." (Hoeft Dep. at 23). The purpose of this scheme was to help GBW cover temporary cash flow shortages. (*Id.* at 24). He also used the misappropriated money to make investments for himself and others in an on-line trading account. (Hoeft Dep. at 41-42).

9. Hoeft recognized at the time that this money came from an escrow account and had been earmarked to pay off prior mortgages and other liens. (Hoeft Dep. at 26, 29-30). He also admitted that use of escrowed funds for purposes other than allowed by the escrow agreement "would not be proper according to the Underwriting Agreement" with First American Title. (State Dep. at 60). He also acknowledged that he did this without the permission of either the purchaser or the lender involved in the closing transactions. (*Id.* at 31-32). The result of this conduct was that the purchasers' title was not clear, but remained encumbered by previous liens. (*Id.* at 32).

10. Hoeft testified that Prime Title took a note and mortgage from GBW to secure the "loans" made to GBW from escrowed funds. (Hoeft Dep. at 28). The scheme collapsed, however, when the market began to fall in the summer of 2005 and GBW was no longer able to pay off the loans. (State Dep. at 145-46).

11. In his deposition testimony, Hoeft minimized the wrongfulness of his conduct: "I wasn't trying to defraud anybody, I was simply borrowing money for a week or two." (Hoeft Dep. at 34). He testified that he thought it was "harmless." (Hoeft Dep. at 37). He was relying on the promises of GBW to repay all the improper loans promptly. (State Dep. at 60, 150). He nevertheless

admitted that it was likely or probable that claims against Prime Title would arise from its failure to discharge previous liens. (Hoeft Dep. at 38-39).

12. Hoeft testified that when he checked the answer "no" to question 21 on the insurance application form in July 2005, he believed his answer to be true. (Hoeft Dep. at 13). This was because he expected GBW to repay all of the "loans" and that no one would suffer a loss as a consequence. (*Id.*).

13. Hoeft estimated that twenty-four listed transactions were involved in this course of conduct. It continued until December of 2005, when the problem was discovered by Old Republic National Title Insurance Company. (Hoeft Dep. at 35). The parties to this case estimate that over $1.4 million was misappropriated from the Prime Title escrow accounts.

14. In light of Hoeft's admitted knowledge of the course of misappropriation over the preceding months, his answer to question 21 of the renewal application on July 13, 2005, was objectively false.

15. Steadfast would not have issued the Policy had Hoeft disclosed the past misappropriations on the renewal application.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law.'" *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where, however, a moving party with the burden of proof seeks summary judgment, it faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). As shown above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of

Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.3d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

This higher standard applies because the plaintiff insurance company has the burden of proving that the Policy was issued in reliance on a material misrepresentation by the insured.

## Discussion

### A.     The Policy

The Policy in question is an errors and omissions policy. An errors and omissions (or "E&O") policy protects against liability based on the failure of the insured, in his or her professional status, to comply with the standard of care for that profession. 1 COUCH ON INSURANCE § 1.35 (3d ed. 2008). An E&O policy is, in essence, a form of malpractice insurance. *See Carey v. Employers Mut. Cas. Co.*, 189 F.3d 414, 417 (3d Cir. 1999). Such policies are designed to insure members of a particular professional group from liability arising out of special risks such as negligence, omissions, and mistakes and errors inherent in the practice of their profession. 9A COUCH, § 131:38. Such policies generally contain exclusions for dishonest, intentional, fraudulent, or criminal acts. *Id.*

The Policy issued in the present case is a typical E&O policy. It covers certain claims made during the policy period "based on an act or omission of the Insured's rendering or failing to render Professional Services for others." (Plf. Ex. I, ¶ I(A)). It excludes from coverage any "intentional, criminal, fraudulent, malicious or dishonest act or omission by any Insured" or any Insured's officers or employees. (*Id.*, ¶ III(A)). The Policy was issued on a "claims made" basis, that is, it covered claims against the insured made and reported during the Policy period. (Policy, p. 1 of 9). *See Pinckney Comm. Sch. v. Continental Cas. Co.*, 540 N.W.2d 748, 750 (Mich. Ct. App. 1995) ("In general, a 'claims-made' policy provides coverage no matter when the alleged error, omission, or act of negligence occurred so long as the misdeed is discovered and the claim for indemnity is made within the policy period."). The plaintiff insurance company predicated renewal each year on an application similar to plaintiff's Exhibit H. The Policy became effective on September 18, 2005, and therefore covered claims made on and after that date, with a retroactive date to September 18, 1998. The application upon which this renewal was based (Plf. Ex. H) was signed on July 13, 2005.

Under Michigan law, all insurance policies are deemed to be contracts, governed by the same principles that apply to all other contracts. *See Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005); *Wilkie v. Auto Owners Ins. Co.*, 664 N.W.2d 776, 787-88 (Mich. 2003).

### B. Claim For Rescission

In count 1 of its complaint, plaintiff seeks rescission of the Policy. Plaintiff alleges that Prime Title, through its executive officer Scott Hoeft, induced plaintiff to issue the Policy, effective September 18, 2005, by means of material misrepresentations contained in the renewal

application, dated July 13, 2005. Plaintiff's principal ground for rescission rests on the answer "No" to question no. 21 in the application:

> Does the Applicant or any Prospective Insured know of any circumstances, acts, errors, or omissions that could result in a professional liability claim against the Applicant? If "Yes," you must complete the enclosed claims addendum for each circumstance.

(Plf. Ex. H). Question 21 is followed by the following statement, set out in bold:

> It is agreed that any claim arising from any fact, circumstance or situation mentioned in the statement immediately above is excluded from coverage for the renewal policy period to which this application applies.

(*Id.*). The application contains the following statements relevant to known, undisclosed claims:

> BY SIGNING THIS APPLICATION ON THIS PAGE THE APPLICANT AGREES THAT AFTER INQUIRY OF ALL PROSPECTIVE INSUREDS, NO PERSON PROPOSED FOR COVERAGE IS AWARE OF ANY FACT OR CIRCUMSTANCE WHICH REASONABLY MIGHT GIVE RISE TO A FUTURE CLAIM THAT WOULD FALL WITHIN THE SCOPE OF THE PROPOSED COVERAGE.
>
> \* \* \*
>
> The discovery of any fraud, intentional concealment, or misrepresentation of material fact will render this policy, if issued, void at inception.
>
> \* \* \*
>
> After inquiry of all prospective insureds, the undersigned authorized officer of the applicant represents that the statements set forth in this application and its attachments and other materials submitted to us are true and correct.

(*Id.*).

It is the well-settled law of Michigan that where an insured makes a material misrepresentation in the application for insurance, the insurer is entitled to rescind the policy and declare it void *ab initio*. *See Lake States Ins. Co. v. Wilson*, 586 N.W.2d 113, 115 (Mich. Ct. App. 1998). The Sixth Circuit has recently summarized the rule as follows:

> Michigan law permits rescission of an insurance policy when the insured makes a material misrepresentation in the application for insurance. *Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 331, 586 N.W.2d 113 (1998), *appeal denied*, 460 Mich. 871, 598 N.W.2d 349 (1999). A misrepresentation is material if the insurer would have charged a higher premium or not accepted the risk had it known the true facts. *See Oade v. Jackson Nat'l Life Ins. Co. of Mich.*, 465 Mich. 244, 254, 632 N.W.2d 126 (2001).

*Old Line Life Ins. Co. of Am. v. Garcia*, 411 F.3d 605, 611 (6th Cir. 2005).

To be the basis for rescission, the alleged misrepresentation must relate to a past or present fact. *Old Line Life Ins. Co. of Am.*, 411 F.3d at 611. In the present case, the record conclusively establishes that Scott Hoeft's submission of the renewal application (Plf. Ex. H) represents a misrepresentation of past or existing fact. Question 21 asked whether the applicant was aware of any "circumstances, acts, errors, or omission" that *could* result in a professional liability claim against the applicant. (Emphasis added). Hoeft answered "no." The bold-face legend appearing one inch below question 21 certifies that "no person proposed for coverage is aware of any fact or circumstance which reasonably might give rise to a future claim that would fall within the scope of the proposed coverage." (Plf. Ex. H, p. 3 of 3). It is undisputed that by the time Hoeft signed the insurance application on July 13, 2005, he had been engaged for a period of months in the misapplication of escrowed funds described in the Proposed Findings of Fact. His testimony, unimpeached in this record, discloses that he began in late 2004 improperly transferring escrowed funds for his own benefit and the benefit of GBW instead of paying off mortgages with the escrowed funds. Hoeft knew at the time that the transfers violated the terms of his agency agreement with the title insurers. (State Dep. at 60, 149-50, 284, 302). Hoeft admitted that the money was held in a fiduciary account (*Id.* at 301) and that the potential existed for claims to be made by homeowners

against the title insurance policies. (*Id.* at 284-85). He also knew at the time that "there was going to be a problem somewhere down the line unless all these liens were taken care of." (*Id.* at 247).

In these circumstances, Hoeft was clearly obliged to answer "yes" to question 21. Even more clearly, his signature on the renewal application affirmatively certified to the insurance company that he was "unaware of any fact or circumstance which reasonably might give rise to a future claim." This representation framed an objective standard, as did question 21. No reasonable trier of fact would be allowed to absolve Hoeft of the consequences of his misrepresentation on the basis of his testimony, repeated constantly in his depositions, that he expected no claims to arise because he relied on GBW to replace the misappropriated funds. Under Michigan law, an escrow agent is "absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed." *Smith v. First Nat'l Bank & Trust Co.*, 440 N.W.2d 915, 918-19 (Mich. Ct. App. 1989) (quoting *Katleman v. U.S. Communities, Inc.*, 249 N.W.2d 898, 901 (Neb. 1977); *see* 2 JOYCE PALOMAR, TITLE INS. LAW § 20:7 (2008). The escrow agent is held to "strict compliance" with the terms of the escrow agreement. *Smith*, 440 N.W.2d at 919. Consequently, Prime Title, acting through Scott Hoeft, violated its contractual and common-law duties the moment it converted escrowed funds for its own use or that of GBW. Hoeft's attempts to minimize the wrongfulness of his conduct by relying on his hope that the purloined funds would be repaid eventually would not create a jury question on the issue whether the statements in the renewal application were objectively false.[3]

---

[3] Virtually every embezzler who enters a guilty plea in this court asserts that he intended to repay the embezzled money at some future date. This subjective intent is irrelevant. The crime is complete when the funds are misappropriated. *See People v. Butts*, 87 N.W. 224, 226 (Mich. 1901) ("It is doubtless true that every employee who misappropriates funds intends to return them to his employer, and to do this before the misappropriation is discovered. But this intention does not

By July 13, 2005, the date upon which he signed the renewal application, Scott Hoeft had been engaged for a matter of months in misappropriating millions of dollars in escrowed funds. He admitted that his conduct was "certainly" in violation of his agency agreement. On any objective basis, the conduct was tortious and very likely was criminal. Hoeft was obligated to disclose these facts, which he acknowledged raised the potential for claims against the Policy, at the time he sought renewal. Failure to do so represented a misrepresentation of past and present facts. Hoeft's deposition testimony that his answers were true because he never expected a claim to be filed does not change this result. Question 21 asked about "circumstances, acts, errors or omissions" that could result in a claim. Hoeft certainly knew about his history of misappropriation. The fact that he did not expect to be caught does not raise a triable issue as to the objective falsity of the renewal application. *See American Guar. & Liab. Ins. Co. v. Jacques Admiralty Law Firm, P.C.*, No. 99-cv-70264, 2003 WL 22077774 (E.D. Mich. 2003), *aff'd*, 121 F. App'x 573 (6th Cir. 2005) (failure of law firm to disclose past embezzlement by partner in renewal application held sufficient to justify rescission of professional liability policy, even in the absence of proof of knowledge of any specific claim).

The other element necessary under Michigan law is a showing of materiality, which simply means that the misrepresented fact was important to the underwriting decision, *i.e.*, if the insurer had known, it would have charged a higher premium or not accepted the risk at all. *Oade*, 632 N.W.2d at 131. Plaintiff has submitted the affidavit of Kathleen J. Ehrichs, Senior Underwriter

---

prevent the act from becoming a crime. The crime consists of the intentional appropriation of the money by the employee of the employer."). This subjective intent is simply not a defense. *See United States v. Busacca*, 936 F.2d 232, 240 (6th Cir. 1991) ("A good faith intent to return embezzled funds does not negate a showing that the defendant acted with the requisite criminal intent to embezzle the funds in the first instance.").

at Steadfast Insurance Company. (Plf. Ex. G). Ms. Ehrichs avers that had Mr. Hoeft answered question 21 honestly and disclosed all material facts, Steadfast would not have issued the Policy. (¶ 4). American Title Insurance has not contested this assertion, nor is there any evidence in the record that might refute it. It is inconceivable that an errors and omissions insurer would issue a policy if informed that the applicant had been engaged for months in a multi-million dollar scheme of misappropriating escrowed funds. This misrepresentation was not tangential or immaterial, but went to the heart of the risk assumed by an insurer writing a "claims made" policy. Such policies, by definition, cover past events that are the subject of claims made during the policy period. The existence of a long-established embezzlement scheme was critical to the underwriting decision, as it was likely, on an objective basis, to lead to claims in the Policy period.

The evidence now before the court establishes, beyond genuine issue, that Steadfast Insurance Company was induced to issue the Policy on the basis of material misrepresentations contained in the renewal application. No reasonable jury faced with this record could conclude otherwise. Steadfast Insurance Company is therefore entitled to a decree of rescission.

    **C.**    **Defendant's Contrary Arguments**

Defendant First American Title Insurance Company, which had a principal-agent relationship with Prime Title, has sued Prime Title, Scott Hoeft, and others in the Kent County Circuit Court for millions of dollars arising from Prime Title's failure to discharge prior liens before issuing title insurance policies in the name of First American Title. Steadfast Insurance Company has been defending the Kent County action under a reservation of rights. First American Title therefore has an interest in upholding the validity of the Policy. In opposition to the motion of

Steadfast Insurance Company for summary judgment, American Title has raised two principal arguments, neither of which withstands scrutiny.

Policy Ambiguity. American Title first argues that the renewal application is ambiguous and therefore it should be construed against the insurance company. American Title specifically relies on the following sentence: "Signing of this application does not bind the applicant or the insured." American Title argues that a reasonable interpretation of this language is that none of the statements made by Hoeft as applicant are to be deemed binding.

It is true that questions and answers in an application for insurance should be construed in favor of the insured. *Old Life Ins. Co. v. Garcia*, 411 F.3d 605, 613 (6th Cir. 2005). This axiom, however, gives defendant no assistance in the present case. Under Michigan law, the terms of an insurance contract must be given their plain meaning, and the court will not create ambiguity where none exists. *See Prestige Cas. Co. v. Michigan Mut. Co.*, 99 F.3d 1340, 1350 (6th Cir. 1996); *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 480 (Mich. 1996). An insurance policy is deemed ambiguous only if it is susceptible of two different, reasonable interpretations. *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 942 (6th Cir. 1993); *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999). In determining whether a policy is ambiguous, it must be read as a whole. *See Pacific Empl. Ins. Co. v. Michigan Mut. Ins. Co.*, 549 N.W.2d 872, 875 (Mich. 1996). When read as a whole, the renewal application could not possibly bear the unreasonable interpretation now ascribed by American Title. The entire purpose of the renewal application was to allow the insurance company to assess the risk. The application states in more than one place that the applicant is certifying the truth of its statements and

that omissions or misrepresentations may void the Policy. No reasonable reader of the application as a whole could conclude that the applicant was absolved of a duty of truthfulness by the sentence relied upon by American Title. The plain meaning of the sentence is that submission of the renewal application does not bind the applicant or the insurer to an insurance contract. American Title's effort to create a triable issue of fact based on this sentence borders on the frivolous.

<u>Scott Hoeft's State of Mind</u>. American Title next argues that summary judgment is inappropriate because of questions of fact regarding Scott Hoeft's state of mind. American Title argues that Hoeft had no intent to deceive or mislead, citing his repeated testimony that he expected to replace all misappropriate funds. American Title argues that Hoeft's alleged intent to defraud frames an issue of fact, precluding summary judgment.

The short answer to American Title's argument is that Hoeft's subjective state of mind is irrelevant to plaintiff's claim for rescission. As between the parties to a contract, if a material misrepresentation is false in fact and the party to whom it is made relies on it to his detriment, the intent, purpose, or motive of the party making the representation is immaterial. *See U.S. Fidelity & Guar. Co. v. Black*, 313 N.W.2d 77, 85 (Mich. 1981); *Dykema v. Muskegon Piston Ring Co.*, 82 N.W.2d 467, 471 (Mich. 1957). Relying on this well-established principle of law, the Michigan courts consistently grant rescission of insurance contracts on the basis of material representations made by the insured, without proof that the insured knew that the representation was false or had intent to deceive. *See, e.g., Manufacturers Life Ins. Co. v. Beardsley*, 112 N.W.2d 514, 515 (Mich. 1961) ("An insurance policy may be canceled for an untrue statement made in good faith or even in ignorance of its falsity, if such misrepresentation materially affected the assumption of

risk by the insurer."); *National Life & Acc. Ins. Co. v. Nagel*, 245 N.W. 540, 541 (Mich. 1932); *Lash v. Allstate Ins. Co.*, 532 N.W.2d 869, 872 (Mich. Ct. App. 1995). The Sixth Circuit has recently summarized the rule as follows:

> Under Michigan law, a material misrepresentation contained in an application for insurance is grounds for rescission by the insurer. Materiality is satisfied when the misrepresentation was an "inducement" for the issuance of the policy; that is, the misrepresentation is material if the insurer would have denied the application if there had been a truthful disclosure.
>
> * * * *
>
> It is not necessary that the misrepresentation be made knowingly, or with intent to defraud, in order for the misrepresentation to serve as a basis for voiding the policy which was procured as a result thereof. Essentially, the standard is strict liability even for innocent misrepresentations.

*Makki ex rel. Baghdadi v. Farmers New World Life Ins. Co.*, 49 F. App'x 36, 38 (6th Cir. 2002) (citations omitted); *accord Fakhouri v. Banner Life Ins. Co.*, 157 F. Supp. 2d 751, 757 (E.D. Mich. 2001) ("Under Michigan law, a material misrepresentation in an application for insurance will invalidate a policy, even though an untrue statement is made in good faith and in ignorance of its falsity.").

If *scienter* were an element of plaintiff's case, summary judgment might well be precluded in the instant case. Mr. Hoeft apparently suffers from a broken moral compass and believes that misuse of other people's money is "harmless" as long as one never gets caught. Under clear Michigan authority, however, plaintiff may rescind the Policy without showing that the misrepresentation was made knowingly or with intent to defraud. American Title's argument to the contrary is unavailing.

**Recommended Disposition**

Any reasonable jury faced with the present record must conclude that plaintiff Steadfast Insurance Company was induced to issue the Policy to Prime Title Services, LLC by material misrepresentations of fact contained in the renewal application. I therefore recommend that plaintiff's motion for summary judgment (docket # 19) be granted on this basis and that the court enter judgment rescinding Policy No. EOC 58776620-02 (Certificate No. T1161602), with effective date September 18, 2005, on the basis of material misrepresentation.


Dated:   November 13, 2008                /s/  Joseph G. Scoville
                                          United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).